

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

FILED
CLERK, U.S. DISTRICT COURT

DEC - 2 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CV10-9239 CAS (JC)

| | |
|---|---|
| VINNIE APICELLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> vs. <br><br> CHINA EDUCATION ALLIANCE, INC., XIQUN YU, SUSAN LIU, and ZIBING PAN, <br><br> Defendants. | CASE No.: <br><br> COMPLAINT <br><br> CLASS ACTION <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Vinnie Apicella ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls

1

and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China Education Alliance, Inc. ("CEU" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of CEU between March 31, 2009, and November 29, 2010, inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

5.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased CEU securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant CEU purports to provide online education and on-site training in the People's Republic of China. The Company through its operating subsidiaries claims to offer educational resources and training through its internet websites and training facilities in China. The Company's main wholly owned operating subsidiaries are Harbin Zhong He Li Da Education Technology, Inc. and Heilongjiang Zhonghe Education Training Center—both of the subsidiaries accounted for nearly almost all of the Company's reported revenue during the Class Period. The Company is headquartered in China and its common stock is listed on the New York Stock Exchange ("NYSE") under ticker "CEU" since January 2010. Prior to that, during the Class Period, the Company's common stock was listed and actively traded on the American Stock Exchange ("AMEX") under the same ticker.

Class Action Complaint for Violation of the Federal Securities Laws

8.     During  the C lass P eriod t he C ompany r eported  three m ain r evenue generating business segments: (a) online education; (b) education training centers; and (c) on-line advertising.   The on line  education a nd e ducation  training c enters consisted more than a majority of all of the Company's reported revenue during the Class P eriod. T he  online  education se gment  purports to , a mong o ther  things, provide on -line educational and vocational pr ograms, dis tance le arning, a nd other educational  resources a nd  programs thr ough  the C ompany's w ebsites to C hinese residents.

9.     The training facility segments provides, among other things, in-person and educational and vocational programs and resources.  D uring the Class Period, the Company's purported main revenue generating training center facility was the Heilongjiang Zhonghe Education Training Center, located at Building 39, High & New Technology Developing Zone, Sidao Street, Qianshan Road, Nagang District, Harbin, Postcode 150080.

10.     Defendant X iqun Y u ( "Yu") a t a ll r elevant  times he rein  was  the Chairman and Chief Executive Officer of the Company and its subsidiaries.

11.     Defendant Susan Liu ("Liu") was Company CFO starting in June 2008 until her sudden resignation from the Company on August 20, 2009.

12.     Defendant Z ibing P an ( "Pan") c urrently se rves  the C ompany C FO since his appointment on August 21, 2009.

13.     Yu, L iu  and P an  are  collectively  referred t o h ereinafter a s  the "Individual Defendants."

14.     During the Class Period, each of the Individual Defendants, as senior executive of ficers, a gents,  and/or  directors of   CEU  and  its  subsidiaries  and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, c onversations and  connections  with other  corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection  therewith.    Because of  th eir po ssession of   such i nformation,  the Individual D efendants k new  or r ecklessly di sregarded t he  fact t hat ad verse f acts specified he rein ha d  not  been di sclosed to,  and  were be ing c oncealed  from, the investing public.

15.     Because of  t he  Individual D efendants' p ositions w ith  the C ompany, they  had  access  to  the  adverse  undisclosed  information  about  the  Company's business, operations, op erational trends, financial s tatements, markets, and present and future business prospects via access to internal corporate documents (including the C ompany's ope rating  plans, b udgets a nd f orecasts a nd r eports  of a ctual operations c ompared the reto), c onversations a nd c onnections  with o ther c orporate officers and employees, attendance at management and Board of Directors meetings

and committees thereof, and via reports and other information provided to them in connection therewith.

16.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein is the result of collective actions of the narrowly defined group of defendants identified above. Each of the above officers and directors of CEU and its subsidiaries and affiliates, by virtue of his or her position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.    As officers, directors and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and that was traded on the NYSE/AMEX and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty

Class Action Complaint for Violation of the Federal Securities Laws

to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.   The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with CEU, each of the Individual Defendants had access to the adverse undisclosed information about CEU's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about CEU and its business issued or adopted by the Company materially false and misleading.

19.   The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company,

were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

20.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of CEU securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding CEU's business, operations, management and the intrinsic value of CEU's securities; and (ii) caused Plaintiff and other members of the Class to purchase CEU securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of CEU during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.    The members of the Class are so numerous that joinder of all members is im practicable.  T hroughout  the C lass P eriod,  CEU's  securities w ere a ctively traded on th e  NYSE/AMEX.   While t he  exact  number  of  Class  members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery,  Plaintiff  believes t hat t here a re a t  least  hundreds of  members  in th e proposed Class.  Members of the Class may be identified from records maintained by CEU or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

23.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24.    Plaintiff will fairly and adequately protect the interests of the members of t he C lass a nd ha s r etained c ounsel c ompetent a nd e xperienced i n c lass a nd securities litigation.

25.    Common questions of law and fact exist as to all members of the Class and pr edominate ove r a ny qu estions so lely a ffecting  individual m embers o f  the Class.  Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of CEU; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

26.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

27.   During the Class Period, CEU issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and true financial condition.  As a result of these materially false and misleading statements, the price of the Company's securities was artificially inflated to a Class Period high of over $7.00 per share.  As the truth of the Company's materially false and misleading statements entered the market, the price of the Company's stock plummeted, falling to less than $3.00 per share.

28.     After the close of trading on March 30, 2010, the Company filed its annual report for the year ended December 31, 2008 on Form 10-K with the SEC. The 10-K was signed by Defendants Yu, and Liu, and, pursuant to Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by Yu and Liu.

29.     In the 10-K, the Company claimed to have generated $24.9 million of revenue during the fiscal year ended December 31, 2008. Of that revenue, the Company claimed that $16.7 million was earned from its online education business segment, and $5.6 million from the Company's training center business segment.

30.     On March 15, 2010, the Company filed an annual report for the year ended December 31, 2009 on Form 10-K with the SEC. The 10-K was signed by Defendants Yu and Pan and, pursuant to SOX, was separately certified by Yu and Pan.

31.     In the 10-K, the Company claimed to have generated $37 million of revenue during the fiscal year ended December 31, 2009. Of that revenue, the Company claimed that $22.2 million was generated from its online business segment and $12 million was generated from its training center segment.

32.     On October 27, 2010, the Company filed with the SEC an amended annual report for fiscal year ended December 31, 2009 on Form 10-K/A. The 10-K/A repeated the revenue figures set forth in the Company's fiscal 2009 10-K set forth above.

33.    The amounts of revenue that CEU reported in its annual reports for 2008 and 2009 were materially false and misleading. The financial statements which CEU filed in its annual reports with China's State Administration of Industry and Commerce (the "AIC") for its main operating subsidiary, Harbin Zhong He Li Da Education Technology, Inc., reported revenue for merely $612,869 for fiscal 2008, $23,598 for fiscal 2007, and $5 4,500 for fiscal 2008. The material discrepancies between CEU's SEC filed financial statements and its official Chinese filed financial statements for one of its main subsidiaries indicates the defendants have engaged in a wide-ranging fraud as further explained below.

## TRUTH BEGINS TO EMERGE

34.    The relevant truth began to enter the market and/or materialize through partial disclosures.

35.    On November 29, 2010, a market research and trading firm called Kerrisdale Capital released an investment report (the "Report") asserting that there is substantial financial fraud at CEU.

36.    The twenty-eight Report set forth a host detailed criticisms that questioned the veracity of the information contained in the Company's financial statements and press releases. The Report shocked the market and caused the Company's stock to decline from its closing price of $4.41 per share on November 26, 2010 to $2.93 per share on November 29, 2010—a decline of 33.6%--before trading on the Company's stock was temporarily halted that day. Trading in the

Company's stock resumed on November 30, 2010 and the Company's stock closed trading on November 30, 2010 at $2.70 per share—down another 7.8%.

37. The Report listed a number of red flags and evidence contradicting the Company's annual reports and public statements filed with the SEC and issued to U.S. investors. The red flags of fraud alleged in the Report included the following that is summarized on the Kerrisdale Investment Blog, kerrisdalecap.com/blog.php (last checked December 1, 2010).

Our evidence includes:

- The company's websites do not work, despite the fact that CEU is an online education provider and its websites are the company's main revenue-generating assets. We have recorded three videos here, here and here which show that the main www.edu-chn.com and www.pk1234567.com websites have non-functioning payment methods and are full of broken links and HTML errors.

- The company's websites receive a fraction of the visitor traffic generated by comparable sites such as those operated by China Distance Education Holdings (DL), which reports lower revenue and lower margins than CEU despite having functioning websites, a larger number of web assets, operational payment schemes and no broken links on their sites.

- We hired an investigator to visit the company's training center in Harbin and found it to be barren of desks and teaching equipment. We provide a video where we present a slideshow of the empty building. We also explain why we are confident we visited the correct location.

- The company's local filings to the Chinese government show that the online business generated less than $1 million in revenue in 2008. We provide SAIC filings from 2006, 2007 and 2008, including both original Chinese photocopies as well as English translations.

13

- The company's financial figures are not believable when compared to publicly traded comparable companies. CEU reports higher margins and revenue growth when compared to DL, CEDU and CAST, despite having a non-functioning website and a vacant training center.

- The company has had 4 low-quality auditors in the past 6 years. In contrast, the comparable Chinese education providers DL, CEDU and CAST all have top-4 auditors.

- The company raised capital in 2009 at an irrationally low valuation without providing a sensible rationale for why the capital was needed. It already supposedly had $38 million of cash on its balance sheet prior to its unnecessary capital raise.

### Applicability of Presumption of Reliance:

### <u>Fraud-on-the-Market Doctrine</u>

38.     At a ll r elevant t imes, the m arket f or CEU's c ommon st ock was a n efficient market for the following reasons, among others:

(a)     CEU's stoc k m et the  requirements  for  listing,  and  is  listed a nd actively  traded  on  the  NYSE a nd AM EX,  both  highly e fficient a nd a utomated markets;

(b)     During the  class period, on  average, over several hundreds of thousands of shares o f  CEU stock were t raded on a  weekly b asis, de monstrating a v ery active a nd broad m arket fo r  CEU stock a nd p ermitting a *very strong* presumption of an efficient market;

(c)     As a regulated issuer, CEU filed periodic public reports with the SEC and  was  eligible  and  did  file  short  form  registration  statements  with  the S EC  on Form S-3 during the Class Period;

14

(d)    CEU regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)    CEU was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)    Numerous NASD member firms were active market-makers in CEU stock at all times during the Class Period; and

(g)    Unexpected material news about CEU was rapidly reflected and incorporated into the Company's stock price during the Class Period.

39.    As a result of the foregoing, the market for CEU's common stock promptly digested current information regarding CEU from all publicly available sources and reflected such information in CEU's stock price. Under these circumstances, all purchasers of CEU's common stock during the Class Period suffered similar injury through their purchase of CEU's common stock at artificially inflated prices, and a presumption of reliance applies.

## **FIRST CLAIM**

**Violation of Section 10(b) Of**

**The Exchange Act Against and Rule 10b-5**

**Promulgated Thereunder Against All Defendants**

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     This claim is brought against CEU and all of the Individual Defendants.

42.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase CEU's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for CEU's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants

in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of CEU as specified herein.

45.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CEU's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about CEU and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of CEU's common stock during the Class Period.

46.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class

Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company=s financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

47.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CEU's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did

not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of CEU's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of CEU's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired CEU common stock during the Class Period at artificially high prices and were or will be damaged thereby.

49. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding CEU's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their CEU common stock, or, if they had acquired such common

stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

50.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

52.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of

### The Exchange Act Against the Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of CEU within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and

disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

55.     In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, CEU and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

57.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

58.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 1, 2010                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws

Name & Address:
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
(213) 785-2610

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINNIE APICELLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>PLAINTIFF(S)<br><br>v.<br><br>CHINA EDUCATION ALLIANCE, INC., XIQUN YU, SUSAN LIU, and ZIBING PAN<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10-9239** CAS (JCx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Laurence M. Rosen__, whose address is __333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071__.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**TANYA DURANT**

Dated: __12-2-10__

By: _____
            Deputy Clerk

1188

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV10- 9239 CAS (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
VINNIE APICELLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

**DEFENDANTS**
CHINA EDUCATION ALLIANCE, INC., XIQUN YU, SUSAN LIU, and ZIBING PAN

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Laurence M. Rosen, Esq. (SBN 219683), THE ROSEN LAW FIRM, P.A., 333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071, (213) 785-2610

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. 78j(b) and 78t(a), securities fraud class action

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:   Case Number:   CV10-9239**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                     CIVIL COVER SHEET                     Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
            ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
            ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
            ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | People's Republic of China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date 12/2/2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |